UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY DEVOUR,

    Plaintiff,                                Civil Action No. 06-13374

v.                                           HON. MARIANNE O. BATTANI
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Jeffrey DeVour brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. Both parties filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment [Docket #11] be DENIED. Further, I recommend that Plaintiff's Motion for Summary Judgment [Docket #7] be GRANTED only to the extent that this case be remanded for further proceedings consistent with Section **C**. of the analysis.

## **PROCEDURAL HISTORY**

Plaintiff, born October 2, 1970, applied for DIB on January 21, 2004, alleging disability as of June 8, 2003. After the initial denial of his application on June 3, 2004 (Tr.

-1-

35-39) Plaintiff filed a timely request for an administrative hearing, conducted on March 28, 2005 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Jerome B. Blum (Tr. 129). Plaintiff, unrepresented by counsel, testified (Tr. 129-138). Raymond Dulecki, acting as Vocational Expert ("VE") also testified (Tr. 138-142). In a decision issued on July 18, 2005, ALJ Blum found that Plaintiff was not disabled because although unable to perform his past relevant work, he could perform other work which existed in significant numbers in the national economy (Tr. 20-21). On June 2, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on July 26, 2006.

## BACKGROUND FACTS

Plaintiff, born October 2, 1970, was age 35 when the ALJ issued his decision (Tr. 22). He graduated from high school (Tr. 55). His past relevant work includes work as a furniture salesman, co-owner of a flower shop, and decorator (Tr. 18, 50, 58). Plaintiff alleges disability as a result of bipolar syndrome with obsessive compulsive disorder ("OCD") (Tr. 49).

### A. Plaintiff's Testimony

Plaintiff, divorced, testified that he lived with his mother, stating further that his own son, 13, did not live with him (Tr. 129). He reported graduating from high school, but dropping out of cosmetology school (Tr. 130). Plaintiff stated that he possessed a driver's licence but drove "very little" because of anxiety, indicating that he relied on various family members for transportation (Tr. 130).

Plaintiff testified that he worked until June 2003, when he was discharged after

threatening another employee (Tr. 131). He opined that he was unable to resume any of his former jobs due to his fear of leaving his house or interacting with other people (Tr. 132). He alleged that financial difficulties had prevented him from seeing his psychologist for the past few months (Tr. 133). He reported further that his financial limitations prevented him from taking his prescribed medications of Prozac, Zyprexa, and Paxil on more than a sporadic basis (Tr. 134). He reported that his condition was characterized by daily feelings of helplessness, depression, and nausea (Tr. 134-135).

Plaintiff admitted to marijuana and cocaine use in his "younger days," but denied the present use of drugs or alcohol (Tr. 135). He acknowledged that alcohol use had previously created social and legal problems, admitting that he had not attended an AA meeting in the past year (Tr. 136-137). Reporting that he stood 5' 4" and weighted over 230 pounds, Plaintiff attributed his obesity to erratic eating patterns and unhealthy dietary choices (Tr. 136). Plaintiff concluded his testimony by stating that in addition to psychiatric problems, he experienced heart palpitations (Tr. 138).

### B. Medical Evidence

### i. Treating Sources

On March 22, 2004, Keith C. Weber, Ed. M., submitted a summary of his treatment records to the SSA, noting that Plaintiff had begun treatment in September 2003 for bipolar disorder and depression (Tr. 103). Weber reported that Plaintiff's long term instability had been exacerbated by his marital problems, noting that since his divorce, Plaintiff had been convicted of identity theft and drunken driving (Tr. 103). Weber characterized Plaintiff's

condition as "Bipolar Disorder of a Mixed Type," stating that Plaintiff reported suicide attempts, hyperactivity, grandiosity, and omnipotence (Tr. 104). Weber noted that Plaintiff began binge-drinking at the age of 28, but had obtained "favorable results" since counseling began in October, 2003 (Tr. 106). Weber, opining that Plaintiff "functions marginally on a daily basis," stated that he did not "seem employable at present" (Tr. 107). He assigned Plaintiff a GAF of 55[1] (Tr. 107).

### ii. Consultive and Non-Examining Sources

In April 2004, Plaintiff submitted to a consultive examination performed on behalf of the SSA (Tr. 108-112). G. Pope M.D., noting a history of social anxiety, recorded that Plaintiff reported good results from Prozac, adding that Plaintiff reported that his grandmother paid for his prescription (Tr. 108-109). Plaintiff indicated that he visited his son on a bi-weekly basis, performed household chores, and assisted his mother with her personal care tasks (Tr. 110). Examination notes state that Plaintiff demonstrated well-developed verbal skills and a good sense of humor (Tr. 110). Plaintiff appeared "properly groomed" with "excellent hygiene" (Tr. 110). Pope deemed a portion of Plaintiff's responses "rather evasive" (Tr. 110). He assigned Plaintiff a GAF of 60[2] (Tr. 112).

A Psychiatric Review Technique performed the following month found the presence

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

[2] *See* footnote 1.

of anxiety, personality, and substance abuse disorders (Tr. 85). The appraisal found further that Plaintiff's conditions created "mild" restrictions in daily activities and "moderate" difficulties in maintaining social functioning as well as in maintaining concentration, persistence, or pace (Tr. 95). A Mental Residual Functional Capacity Assessment completed the same day found "moderate" limitations in Plaintiff's ability to maintain concentration for an extended period, perform activities within a schedule, sustain "an ordinary routine without special supervision," and the ability to complete "a normal work-day and workweek without interruptions from psychologically based symptoms" (Tr. 99). The assessment concluded by noting that Plaintiff's alcoholism was in remission and that he demonstrated an ability to care for himself, drive, and shop consistent with the ability for gainful employment (Tr. 101).

### iii. Sentence Six Material[3]

In January 2006, Keith C. Weber, Plaintiff's treating mental health source submitted a Psychiatric Review Technique, finding that Plaintiff was disabled as a result of an affective and personality disorders, stating further that Plaintiff experienced uniformly "marked," "frequent," or "continual" functional limitations (Tr. 114, 116, 118, 120). Noting that Plaintiff had been readmitted the same month for his "worsened" symptoms, Weber opined that he was "not employable because of his mental health issues" (Tr. 115).

### C. Vocational Expert Testimony

---

[3]As discussed more fully *infra*, this Court can consider this material (Tr. 114-123) submitted only after the ALJ issued his decision, for the narrow purpose of determining whether it is both new and material to the administrative decision. 42 U.S.C. §405(g).

VE Raymond J. Dulecki classified Plaintiff's previous work as semi-skilled, with an exertional level of medium for the flower-shop work, finding further that Plaintiff's work as a designer was performed at the light, medium, and heavy exertional levels (Tr. 139). The VE testified that none of Plaintiff's former positions would be transferrable to the sedentary exertional level (Tr. 140). ALJ Blum posed the following question to the VE:

> "Assume for the moment that [Plaintiff] has some psychiatric, psychological problems which basically would be, make it uncomfortable for him to deal with the public. Do we have any jobs, say unskilled jobs, that wouldn't utilize his sales skills, that would pretty much allow him to work in isolation almost?"

(Tr. 140-141).

The VE testified that given the above limitations, such an individual could perform light janitorial work, as well as "work in material handling and stock positions," adding that such positions would require only limited contact with coworkers (Tr. 141). He found the existence of approximately 20,000 of such jobs in the Detroit area (Tr. 141). He indicated that if Plaintiff's allegations "about being alone, being depressed and not wanting to go out, [and] deal with people" were incorporated into the hypothetical question, he would be precluded from all full-time work (Tr. 142).

**D. The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Blum noted the diagnoses of bipolar disorder, alcohol abuse, chronic anxiety disorder, narcissistic, dependent, and histrionic personality traits, exogenous obesity, and a reported history of cerebral aneurysm, finding however

Plaintiff did not experience a severe impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P, 20 CRF Part 404 (Tr. 19). He found that while Plaintiff was unable to perform any past relevant work as a furniture salesman or co-owner of a flower shop, he retained the residual functional capacity "to perform the exertional requirements of unskilled light work with limited contact with the public, co-workers and supervisors." (Tr. 21). Citing the VE's job findings, the ALJ determined that Plaintiff could perform "20,000 light positions as a janitor, material handler, or stock person" (Tr. 21).

The ALJ found that Plaintiff's alleged degree of limitation was unsupported by "objective diagnostic and clinical evidence," citing a consultive psychiatrist's observation that Plaintiff appeared pleasant and relaxed, noting further that Plaintiff drove himself to his consultive exam (Tr. 20).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Hypothetical Question

Plaintiff argues first that the hypothetical question posed to the VE did not encompass the full extent of his limitations as a result of his mental condition. *Plaintiff's Brief* at 11-15. Citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002), he argues that the ALJ committed reversible error by composing a question which failed to include "conditions as testified to by . . . the treating psychotherapist and consulting doctor." *Plaintiff's Brief* at 13.[4]

In *Varley v. Secretary of Health & Human Services,* 820 f.2d 777, 779 (6th Cir. 1987) the court held that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations

---

[4] The portion of *Howard, supra*, relied upon by Plaintiff has since been clarified by *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 631 -632 (6th Cir. 2004) which rejects the interpretation that an ailment must be directly acknowledged in the hypothetical question:

> "Admittedly, there is some confusing language in *Howard* that could conceivably be viewed as requiring that hypothetical questions include lists of claimants' medical conditions. However, we conclude that, given the facts present in *Howard,* that language is not part of its holding, nor can it be so construed if *Howard* is to be read to be consistent with the holdings of our prior decisions."

*Id.* In any case, the Court will consider Plaintiff's more generalized argument that the ALJ failed to include all of his work-related limitations in the hypothetical which thus invalidated the VE's job findings. *Varley v. Secretary of Health & Human Services, infra,* 820 F.2d 777, 779 (6th Cir. 1987).

omitted).

In the present case, I disagree with Plaintiff's contention that the hypothetical was required to include all of his alleged limitations. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987). Substantial evidence, as discussed in the administrative opinion, supports the ALJ's omission of a number of Plaintiff's claims. Plaintiff testified at the hearing that he drove "very little" (Tr. 130). However, notes from his March 2004 consultive exam suggest that Plaintiff continued to drive regularly (Tr. 110). Although Plaintiff alleged that social anxiety kept him virtually housebound, he told his counselor that he attended church biweekly with his son, interacted with subcontractors performing work at his mother's house, and visited regularly with at least one good friend (Tr. 105). Likewise, while Plaintiff alleged that he was unable to cope with the demands of full time work, the record shows that he performed a full repertoire of household and personal care duties for his ailing mother on a regular basis, including shopping for groceries (Tr. 69, 71, 105, 110).

I also disagree with Plaintiff's implied argument that the hypothetical question did not fully account for moderate limitations in his work-related abilities, as determined by the May 2004 Psychiatric Review Technique and Mental Residual Function Capacity Assessment. This Court has recognized in the past that the failure to acknowledge moderate work-related limitation constitutes reversible error. However, in the present case, this argument fails for

two reasons. First, substantial evidence, as discussed in the previous paragraph, supports the ALJ's determination that allegations of "debilitating depression and anxiety" stood unsupported by "[Plaintiff's] behavior as described by the consultative psychiatrist" (Tr. 20). Second, even assuming that Plaintiff experienced moderate work-related limitations in concentration, persistence, or pace, along with the potential for "interruptions from psychologically based symptoms," as found by non-examining sources, these limitations were sufficiently acknowledged by the hypothetical question (Tr. 95, 99).

For example, in reference to Plaintiff's alleged concentrational and pacing limitations, the VE's findings omitted assembly-related work requiring production quotas (Tr. 141). The hypothetical question and VE's response also accounted for Plaintiff's claim that he could not get along with coworkers by noting that the janitorial positions included in his job findings precluded extensive interaction with other employees[5] (Tr. 141). Although the ALJ did not adhere to talismatic language in his hypothetical, this was not required to avoid remand provided that the question reflected Plaintiff relevant limitations. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Finally, the job findings appear to incorporate the emotional and intellectual limitations found in Weber's March 2004 summary[6] (Tr. 103-107).

---

[5]However, as discussed, *infra*, in Section **C**., the dialogue between the ALJ and the VE contains procedural and substantive errors pertaining to Plaintiff's exertional level which require remand.

[6]Weber's March 2004 assessment contains his opinion that Plaintiff did not "seem employable at present" (Tr. 107). However, the ultimate legal conclusion as to whether a plaintiff is disabled or unable to work is reserved to the Commissioner, not the medical

**B. Sentence Six Remand**

Next, Plaintiff argues for remand based on the January 2006 submission of an evaluation by Weber which states that Plaintiff is disabled as a result of severe functional limitations (Tr. 115). On a related note, he argues that the ALJ neglected the heightened duty to develop the record in the case of an unrepresented claimant by failing to elicit Weber's opinion or contacting former treating sources before issuing his July 2005 opinion. *Reply* at 3.

Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. In *Cotton*, the court held that where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

---

treating sources. SSR 96-8p, fn.8; 20 C.F.R. §404.1527(e)(1).

Plaintiff's Sentence Six argument fails for a number of reasons. First, although pursuant to *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir. 1983), the ALJ had a heightened duty to develop the facts of the case, nothing in the administrative record suggests that Weber's original report, created in March, 2004 (just over 12 months before the hearing) required an update.[7] Further, assuming that the ALJ's failure to procure and consider these records constitutes "good cause" for the January, 2006 updated assessment, this material, if credited, alludes to a downturn in Plaintiff's condition postdating the ALJ's decision.[8] If Plaintiff wishes to establish that he experienced a deterioration of his condition or the onset of another illness subsequent to the ALJ's July 2005 decision, the appropriate remedy is to initiate a new claim for benefits alleging an onset date consistent with the deterioration. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988).

**C. SSR 00-4p**

Finally, Plaintiff submits a two-sentence demand for remand on the basis that the ALJ did not ask the VE about any possible conflicts between his testimony and the Dictionary of

---

[7] I also disagree that the ALJ automatically created reversible error by devoting only eight transcript pages to Plaintiff's testimony. The ALJ's question appeared to encompass the information relevant to Plaintiff's claim. Further, although the record before the ALJ contained the findings of only one treating source, Weber's March, 2004 report contains a detailed four and a half, single-spaced summary of treatment and diagnostic notes (Tr. 103-107). Further, the treating record was supplemented by an April 2004 consultive examination (Tr. 108-112).

[8] Weber refers to Plaintiff's "worsening condition" (Tr. 115).

Occupational Titles ("DOT").  *Plaintiff's Brief* at 16.

SSR 00-4p provides in pertinent part:

> "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."

2000 WL 1898704, *4.

ALJ Blum clearly excluded the question mandated by SSR 00-4p.  Faced with an omission of a inquiry required by the Ruling, the question is whether such an omission constitutes reversible or harmless error.  As in the present case, the Sixth Circuit in *Lancaster v. Commissioner of Social Security* 2007 WL 1228667, *11 (6th Cir. April 26, 2007) remanded on the basis that although the ALJ did not inquire about conflicts between the VE's testimony and the DOT, the administrative opinion contains the erroneous statement that the job findings by the VE "are consistent with the DOT" (Tr. 21).  However, *Lancaster* is partially distinguishable from this point on since in  Lancaster's appeal to the district court, he argued and discussed actual inconsistencies between the VE's testimony and the DOT, whereas in the present case, as pointed out by Defendant, Plaintiff has not alleged any inconsistency, but merely a failure to inquire about the presence of conflicts.  *Id.*

*Lancaster* skirts the question of whether the failure to pose the "inconsistencies" question, in and of itself, mandates remand, noting that "[c]ourts are divided as to whether the failure to inquire into DOT inconsistencies entitles a

Plaintiff to relief." *See Brown v. Barnhart,* 408 F.Supp.2d 28, 35 (D.D.C. 2006)("[T]here is substantial and persuasive authority that under SSR 00-4p, "the mere failure to ask such a question cannot by itself require remand."*Id.*; *Hodgson v. Barnhart,* 2004 WL 1529264, at *2 (D.Me. 2004); *See also Jackson v. Barnhart,* 120 Fed.Appx. 904, 906, 2005 WL 23363 *1 (3rd Cir. 2005)("Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision."); *Tisoit v. Barnhart,* 127 Fed.Appx. 572, 575, 2005 WL 751916, *2 (3rd Cir. 2005)(FN 1) "This Court has not held that mere failure to inquire about the possibility of an inconsistency under SSR 00-4p mandates reversal."). *But see Teverbaugh v. Commissioner of Social Security,* 258 F.Supp.2d 702, 706 (E.D.Mich. 2003) (Roberts, J.) ("Because the VE's testimony was the only step five evidence that the ALJ relied upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings.") Other circuits have reversed on the basis that the "inconsistencies with the DOT" question was omitted, however, in these cases the remand was supported by the question's absence, coupled with an identifiable inconsistency between the VE's testimony and the DOT. *See Haddock v. Apfel,* 196 F.3d 1084, 1087 (10th Cir. 1999); *Prochaska v. Barnhart,* 454 F.3d 731, 736 (7th Cir. 2006).

Because in this case, as in *Haddock, supra*, the error in omitting the question is in fact accompanied by obvious and material inconsistencies between the testimony

and DOT, a remand is appropriate.[9] An examination of the DOT's "janitor" listings indicates, contrary to the Defendant's claim, that *none* of the five sub-classifications allow for exertionally "light" work as determined by ALJ Blum.[10] Further, although Defendant urges that the VE's testimony should be interpreted to include the DOT listing of "Cleaner, Housekeeping," an exertionally light position, the description accompanying this title (323.687-014) indicates that its job requirements stand at odds with the hypothetical question's limitations.[11] For instance, an individual holding this position might be required, among other duties, to "[c]heck wraps and render[] personal assistance to patrons," contrary to the ALJ's determination that Plaintiff should experience only limited contact with the public, co-workers, and supervisors

---

[9] The Defendant argues that the Plaintiff has waived this issue by failing to identify an actual conflict between the VE's testimony and the DOT. While it is true that Plaintiff's counsel raised this issue in a rather perfunctory manner, it was nonetheless supported by an appropriate citation of relevant regulations and case law, and has thus been fairly presented for review. Certainly under the *Teverbaugh* analysis, the issue was properly raised.

More importantly, there is in fact a significant conflict between the VE's testimony and the DOT, as discussed *infra*. Even if the Plaintiff's failure to discuss the substantive defects in the VE's testimony would otherwise permit the Court to deem this issue waived, a remand can be granted *sua sponte* on the basis of an unraised but critical issue. *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005). Given the critical nature of the error, a *sua sponte* remand in this case would be appropriate.

[10] DOT classifies four janitor listings as medium, (codes: 382.664-010, 381.687-018, 389.667-010, 381.137-010) and one, (code: 381.687-014) as heavy.

[11] The Defendant also cites 203.582-054. However, the DOT lists that position as "data entry clerk."

(Tr. 21).[12]

In closing, I note that although Plaintiff requests remand for an award of benefits, the errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits. Thus, I find that pursuant to *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), this case should be remanded for further proceedings consistent with Section **C.** of the analysis.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment should be DENIED. Further, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED only to the extent that this case be remanded for further proceedings consistent with Section **C**. of the analysis.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

---

[12]In any event, the VE did not say the Plaintiff could work as a "cleaner/housekeeper." He said the Plaintiff could perform "light janitorial work"–a classification that does not exist in the DOT.

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<pre>
                                        S/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE
</pre>

Dated: May 16, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 16, 2007.

<pre>
                                        S/Gina Wilson
                                        Judicial Assistant
</pre>